# CHARLESTON.

STATE *v.* VICTOR MOSS

(No. 6548)

Submitted March 11, 1930.     Decided March 18, 1930.
(Rehearing denied April 21, 1930).

*Donald G. Lazzelle,* for plaintiff in error.

*Howard B. Lee,* Attorney General, and *W. Elliott Nefflen,* Assistant Attorney General, for the State.

LIVELY, PRESIDENT:

Convicted of having in possession moonshine liquor, as a second offense, and sentenced to one year in the penitentiary, Moss prosecutes this writ.

He says that, (1) the evidence does not warrant the verdict; (2) the indictment is bad; (3) the search warrant on which evidence was predicated was defective and void, hence all the

evidence procured thereunder should have been withheld from the jury; and (4) State's instructions were erroneous.

On February 18, 1929, the sheriff, his deputy, the chief of police of the city of Morgantown, a member of the state police, and perhaps other officers, raided a small house at No. 1101 University Avenue in the city, the deputy sheriff having in his possession a search warrant for that particular building, in which it was commanded that liquors, etc., therein found should be seized, and that all persons found in the premises be apprehended. They entered the first room where tobacco, cigarettes, candy, etc., were retailed, and attempted entrance through a door to the adjoining room. The door was heavily barred and bolted from the opposite side, and had three observation holes of about one inch in diameter covered from the inside. They demanded entrance; the door was not then opened, they kicked in one of the lower panels, the door was then unbolted and opened. They found defendant therein, with two other men and two women, one of the latter apparently intoxicated. They found bottles, drinking glasses, corks and the like, the bottles containing a few drops of moonshine liquor. An odor of liquor and filth pervaded the room. Concealed under the floor in a false chimney, just under the stove, they found a keg containing several gallons of moonshine liquor. The top of the keg was just under the floor, and a hole was bored through the floor over the keg near a leg of the stove, and a cork placed in the hole in such a way that discovery was difficult. The contraband liquor, bottles, glasses and the like were confiscated and placed in evidence; the men were put under arrest, but Moss slipped away, and was apprehended, or voluntarily surrendered, a day or so later. Sales from a wholesale grocery company were made to Moss & Majestic in that month at that house and charged to them. Moss was frequently seen there waiting on customers, and closing and locking the door at night. The building was owned by Luigi Lapera and the rent was paid him by one Frank Ramola. Defendant offered no evidence. The jury was warranted in finding that defendant was in possession of a quantity of moonshine liquor, on the 18th of February, 1929. The first assignment is not tenable.

It is asserted that the indictment does not properly charge a second offense, and therefore the evidence of the first conviction should have been excluded. This alleged deficiency is based on the fact that the indictment does not allege that the first offense charged therein was against the State; and it is argued that said offense may have been against a municipal ordinance. The indictment charges that on October 25, 1925, at the October Term of the circuit court of that county, said Victor Moss was duly tried under and by name of V. Moss upon appeal case No. 1491 for unlawfully having in his possession a quantity of moonshine liquor, and "upon a plea of *nolo contendere* by said Victor Moss, said Victor Moss was duly convicted of unlawfully having had in his possession a quantity of moonshine liquor, and upon said conviction said Circuit Court of Monongalia County, West Virginia, on the 16th day of April, 1926, at the April, 1926 Term of said Circuit Court, sentenced said Victor Moss to be confined in the jail" for a stated time and be fined $100.00. The description of the first offense need not be technically perfect. *State* v. *Hoilman*, 82 W. Va. 98. The purpose of averaging the first conviction is to advise defendant with sufficient directness and particularly of the offense he is required to meet and to enable the court to determine whether the statute applies. *State* v. *Savage*, 86 W. Va. 655; 16 C. J., p. 1342, sec. 3159. Here, defendant was told the time, the court, the offense, the conviction and the sentence which he was required to meet. The appeal on which he was tried is numbered. Whether that appeal was from a trial had before a justice of the peace, or a mayor, or a person acting as such, is of little consequence, for it is the duty of municipal officers to enforce the prohibition statute in the municipality independently of any ordinance, or want of ordinance. Sec. 29, chapter 32-A, Code. The gist of the charge is that defendant was convicted and sentenced for a violation of the prohibition statute, namely, for having possession of a quantity of moonshine liquor, and he is sufficiently advised by the indictment of what offense he has to meet. The record of that conviction, introduced to prove the charge of first conviction, shows that the appeal case originated before Posten, a justice of the peace, on informa-

tion and warrant regularly filed and issued. Moreover, the style of that case in the circuit court was, State of West Virginia v. Moss. We conclude that the indictment is sufficient as charging a first and second offense of having in possession moonshine liquor. But in this connection, it is argued that the indictment is bad as charging a first conviction, because it shows on its face that the first conviction was based on a plea of *nolo contendere* entered by defendant; and, it is argued, this plea does not admit the truth of the facts charged in the indictment for purposes other than those in the case in which it is made, and it is such a plea as cannot be used against the defendant in any subsequent criminal proceeding under a statute providing an additional penalty for a second or recurring offense. That argument would be availing if the indictment had not set out the conviction and sentence under that plea. The conviction makes the offense, and it is immaterial whether the plea was guilty, not guilty or *nolo contendere*. A plea of guilty would not sustain an indictment for a second offense unless it was averred that judgment and sentence had been pronounced; for the court might not have accepted that plea, and required proof. There must be finality. A verdict of guilty would not be sufficient, for that verdict may be set aside, or the court, on motion, may hold it for consideration. Prisoner's counsel relies on *State* v. *La Rose*, 71 N. H. 435, 52 Atl. 943, for the above proposition that a plea of this character prevents a conviction under a statute providing an additional penalty for a recurring offense. In that case the indictment charged a prior conviction, but there was no evidence introduced of a judgment of conviction, if one was had, the only evidence in that regard being that defendant had pleaded *nolo contendere* to the former charge of keeping spirits for sale. There was no finality. In *State* v. *Fagin*, (N. H.) 14 Atl. 727, the same court held that in a prosecution for a second offense, the defendant's conviction of a previous offense is equally conclusive whether his plea in the previous case was guilty, not guilty, or *nolo contendere*. It is the *conviction* which controls, not the *plea* interposed. It is here argued that the *La Rose* case overrules the *Fagin* case, at least, by implication. We do not so inter-

pret it. The cases were dissimilar. Both were cases in which convictions were asked for a second offense, and in the first case in point of time (*Fagin* case) the defendant on the indictment for the first offense plead *nolo contendere,* and judgment and sentence were imposed. In the later *La Rose* case, there was no conviction shown on defendant's plea of *nolo contendere,* and the court held that the plea of *nolo* was not sufficient to show a conviction, and was not therefore conclusive on defendant that a conviction was had. In discussing the effect of such a plea, the court pointed out that a judgment is not evidence of the facts adjudicated by it except between the parties to it and those in privity with them; that if a person plead guilty to an assault in a criminal case, the fact of pleading guilty could be used against him in a suit for trespass for the same assault; but if the plea in the criminal case was not guilty, or *nolo contendere,* the record in the criminal case was not admissible. By the plea of *nolo,* there is no confession of guilt. It has the effect of a confession for the purposes of that case, and judgment and sentence may be pronounced. As between other parties, as in a civil suit, the plea and judgment would not be admissible; ''but as between the same parties to the proceeding,—the state and the defendant—the validity of the judgment does not depend upon the character of the plea.'' *State* v. *La Rose, supra.* In *State* v. *Lang,* 63 Me. 215, defendant was indicted for keeping and maintaining a shop where he sold liquors contrary to law, and previous convictions were offered in evidence, one of which was rendered on a plea of *nolo,* objected to by defendant; and the court held that ''judgments obtained in criminal cases are conclusive evidence, between the same parties, of all the facts necessarily adjudicated by them, not excepting such judgments as are based upon a plea of guilty or of *nolo contendere.*'' In the recent case of *State* v. *Suick,* (Wis. 1928), 217 N. W. 743, the point of error under consideration was squarely before the court, which held that a judgment based on plea of *nolo* was an adjudication of guilt, and conclusive between the same parties of a prior conviction upon an indictment for a second like offense. The court cited with approval the *Lang* and *Fagin* cases, *supra,* and the case of

*State* v. *Conway,* 20 R. I. 270, 38 Atl. 656, which latter case was somewhat similar to the *La Rose* case, *supra,* in that while the plea of *nolo* received in the prior conviction was offered, there was no record of the conviction itself offered; and the court held this was not sufficient to establish a prior conviction; but used language to indicate that if the *judgment* on the plea had been offered it would have been admissible to show a prior conviction. It is argued that these cases are not sound in principle, and that whenever a judgment is rendered on a plea of *nolo,* that judgment has no effect in any subsequent case even between the same parties. *Honaker* v. *Howe,* 19 Gratt. 50, is cited. That was a case where defendant, in a criminal action for assault and battery, had made no plea to an indictment against him for the same assault and was fined $5.00. This record of conviction was offered in evidence in the civil suit, and it was held that the conviction was not evidence in the civil suit to prove the fact, nor to enhance the damages. There, the parties were not the same, and there had been no confession of guilt in the criminal case. *Olszewski* v. *Goldberg,* (Mass.) 111 N. E. 404, is cited to sustain defendant's above contention, which was a civil suit in which it was sought to discredit a witness for defendant by showing that he had been convicted, on a plea of *nolo,* of selling an airgun to a minor, and the court held that the record could not be introduced in another proceeding to affect the credibility of a witness. In *Chester* v. *State,* (Miss.) 65 So. Rep. 510, defendant was charged with keeping for sale intoxicating liquors and it was shown that she had been arraigned in the city court for the identical offense and her counsel, in her absence, had interposed a plea of *nolo.* Evidence that she had pleaded *nolo* was held to be inadmissible and prejudicial. The parties were not the same, nor did it appear that the record of the conviction on the plea was introduced. The general expression found in various cases and in the text books such as in Vol. 2, Bish. New Crim. Procedure, sec. 802, to the effect that the plea of *nolo* has no effect beyond the particular case refers to the plea itself and not to the judgment on the plea in another proceeding where the parties are the same. We have been cited to no decision,

and have found none, which holds that the record of conviction on a plea of *nolo* is not a "first conviction" under a statute imposing a heavier penalty for a recurrence of the same offense by the same person. It will be noted that our statute, sec. 3, chap. 32-A, Code, requires the prosecuting attorney not only to ascertain if there has been a first offense and charge it in the indictment, but to place in evidence the record of the first conviction. It is the conviction which makes the first offense, and not the plea on which it is based. In discussing the plea of *nolo contendere*, 16 C. J. 404, sec. 739-b, says: "When accepted by the court, it (the plea) becomes an implied confession of guilt, and, for the purposes of the case only, equivalent to a plea of guilty; and when judgment has been entered on the plea, the record is competent evidence of the fact of conviction." Had there been no charge of prior conviction in the instant case, or no evidence to sustain a prior conviction; and evidence only that defendant had plead *nolo contendere,* then the point of error here alleged would be well taken. Shall a violator of the law escape the additional penalty for a recurring violation simply because he admitted his guilt in the first trial? Statutes for increased punishments upon second conviction are based on the theory that the former punishment has failed to effect a reformation, one of the objects of punishment, and the prisoner has placed himself in the class of habitual offenders and should therefore be more severely punished. To allow a conviction on a plea of this character to make the offender immune from more severe punishment upon a repetition of the offense would defeat the purpose of "second offense" statutes.

It is urged that the search warrant was void, because it was directed "to deputy sheriff or any constable of said County." Reliance is had upon sec. 3, chap. 155, Code, which says: "Every search warrant shall be directed to the sheriff or any constable of the county in which the place to be searched may be", etc. This section has reference to searches for property which has been stolen, embezzled or obtained by false pretenses, and which are issued by justice of the peace. Sec. 9, chap. 32-A, Code, empowers justices, criminal or intermediate courts, or the judges thereof in vacation, and every mayor of

a city, town or village to issue search warrants for houses or other places where liquors are kept, sold, etc., contrary to law, and requiring *the officer to whom such warrants are directed* to seize and hold liquors, etc., and to arrest parties there found, and summon witnesses. The assistant attorney general directs attention to sec. 11, chap. 7, Code, which provides for the appointment of deputy sheriffs with power to perform and discharge any of the official duties of the sheriff and making the sheriff's bond liable for any default or misfeasance of the deputy. There is no question of the power of the sheriff or his deputy to execute a search warrant. Then why should not the warrant be directed to either? A bonded officer is responsible for what may be done under the warrant, all persons are protected by that bond, and it is extremely technical to hold that while a deputy may execute a warrant directed to his principal, and be protected from prosecution for an illegal search by that paper, he would not be protected from illegal search if the warrant was directed to himself commanding a search. We can see little distinction in directing the writ to either. Both have the same powers and duties in its execution. And in the instant case both the sheriff and the deputy together executed the search. It does not appear whether a constable was present. The point of error is based more on form than substance. There is no provision of law which prohibits a search warrant from being directed to a deputy sheriff for execution, and as above stated, he has the power to execute it. For the same reasons a return may be made by either of the two officers of what was done by him under the warrant.

Error in the instructions given for the state is based on the fact that they tell the jury that if they believe beyond a reasonable doubt that defendant had moonshine liquor in his possession as charged in the indictment and that he had been previously convicted of having possession of moonshine liquor, they should find him guilty as charged. The criticism is that defendant could not be found guilty of a felony as charged, because of his plea of *nolo contendere* in the first conviction. What we have heretofore said negatives that criticism. It is argued that state's instruction No. 2, which

told the jury that if they believe from the evidence beyond a reasonable doubt that moonshine liquor was found in the premises occupied by or under the control of defendant, this fact raises a presumption against defendant of unlawful possession thereof, and standing alone and unexplained would be sufficient to justify a conviction for unlawful possession, is bad because misleading, for the jury might infer that defendant was presumed by law to be guilty unless he could make a satisfactory explanation. This point of error is answered by *State* v. *Zink*, 102 W. Va. 619, 624. Moreover, this instruction is not a binding one, and the jury was fully told by defendant's instructions that the presumption of innocence should be given him throughout the trial until it was rebutted by strong, clear and convincing evidence which would satisfy them that he was guilty beyond a reasonable doubt. Instructions must be considered together. We cannot see that the jury was likely to be misled on the presumption of innocence which should be accorded defendant.

*Affirmed.*